

Opinions of the United
States Court of Appeals
for the Third Circuit

10-20-2004

# Zhoa v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1293

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation
"Zhoa v. Atty Gen USA" (2004). *2004 Decisions.* Paper 207.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/207

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 03-1293

LIANGMING ZHAO,

Petitioner

v.

John Ashcroft, ATTORNEY GENERAL OF UNITED STATES OF AMERICA,

Respondent

On Petition for Review of an Order of Removal from
the Board of Immigration Appeals

File: A78-206-646

Submitted Under Third Circuit LAR 34.1(a)
September 20, 2004

Before: McKEE, ROSENN and WEIS, Circuit Judges

(Opinion filed: October 20, 2004)

OPINION

McKEE, Circuit Judge.

Liangming Zhao petitions for review of the Board of Immigration Appeals'

removal order. Because we find that the BIA's decision is supported by substantial

evidence, the decision will be affirmed.

**I.**

Zhao is a native and citizen of the People's Republic of China. A.R. 29. He entered the United States on March 13, 1999 and obtained a non immigrant B2 visitor's visa which permitted a one month stay. Zhao thereafter submitted an application for asylum and withholding of removal based on his religious beliefs and China's family planning policies. A.R. 334. In the affidavit attached to his application, Zhao alleged that he and his mother were Christians and that they had attended a government sponsored church in China. According to Zhao, when church members grew dissatisfied with the Communist party's influence over the church's religious activities, Zhao's mother began holding services in her home. A.R. 342. She stopped hosting these religious gatherings in response to pressure from the police and Zhao then began having them at his own home. Zhao alleges that he was detained for 15 days after the police raided his home during one of these worship services in June of 1997. Later that year in December, Zhao was allegedly sent to a reeducation labor camp for one year after the police raided his home for a second time. Zhao alleges that he was tortured and forced to work at the camp and that his wife was forced to have an abortion. He also claims that the authorities threatened them both with sterilization for violating China's family planning policy. *Id*.

Zhao conceded removability before the Immigration Judge but argued his claim of asylum and withholding of removal. He also asked for relief under the Convention Against Torture but requested voluntary departure in the alternative. During the removal

2

hearing, Zhao testified that his wife gave birth to their first child on October 6, 1991. A.R. 81. Six months later, his wife was required to have an Intrauterine Device. However, when she went to have the IUD inserted, the clinic allegedly discovered that she was again pregnant and forced her to have an abortion. A.R. 113-114. According to Zhao, his wife's heart problems caused her to have the IUD removed at a private clinic. Zhao testified that his wife subsequently became pregnant and gave birth to their second daughter.[1] A.R. 117.

The Immigration Judge found that Zhao lacked credibility, denied his applications for asylum, withholding of removal, relief under the Convention Against Torture and voluntary departure; and ordered his removal from the United States. A.R. 44. The IJ's adverse credibility finding was based on several factors including the fact that Zhao could not precisely remember when his wife was forced to have an abortion, Zhao's lack of detail and corroboration documentation, internal contradiction in Zhao's testimony, the fact that Zhao was able to keep his passport while at the labor camp and did not have problems with Chinese authorities when he left China, the fact that Zhao was not wanted in China and his family has never been imprisoned; and Zhao's lack of knowledge about the Christian religion despite his testimony about involvement with, and attendance at, religious services. A.R. 38-42.

---

[1] Zhao alleges that his eldest daughter has a brain tumor and that she cannot benefit from the national health care system because they violated the family planning policy. A.R. 123.

The IJ also explained that even if he had found Zhao credible, he would still have denied Zhao's applications for relief because Zhao's experiences with officials in China did not constitute "persecution", A.R. 42-43. Finally, the IJ held that even if the record established "persecution," Zhao would not be entitled to relief because the record established that conditions have changed in China since Zhao left. Specifically, the IJ found that based on State Department reports, Chinese authorities would now permit Zhao's participation in religious gatherings in the home. A.R. 42-44. The BIA issued a *per curiam* order affirming the IJ's decision without opinion pursuant to 8 C.F.R. § 1003.1(e)(4) on January 10, 2003. This appeal followed.

## II.

We have jurisdiction to review final orders of an administrative agency. 8 U.S.C. § 1252 (a)(1). Administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to reach a contrary conclusion. *Dia v. Ashcroft,* 353 F.3d 228, 247-48 (3d Cir. 2003) *citing* 8 U.S.C § 1252(b)(4)(B). We affirm the IJ's findings as long as they are supported by "substantial evidence." "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established." *Id.* at 248. The Supreme Court has stated that substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *N.L.R.B. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

4

## III.

To establish a claim for asylum or withholding of removal, an applicant must establish that he/she is a "refugee." 8 C.F.R. § 208.13(a). A "refugee" is defined as:

> Any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. §1101(a)(42).

An alien can prove that he/she has a "well founded" fear if a reasonable person in the alien's circumstances would fear persecution. A rebuttable presumption of a well founded fear is established if an alien can prove past persecution. 8 C.F.R. § 208.13(b)(1). However, the presumption can be rebutted if there has been a "fundamental change . . . in the applicant's country." *Id.* at (i)(A).

To obtain withholding of removal, the alien must establish that his/her life or freedom "would be threatened" because of one of the aforementioned statutory grounds if he/she were forced to return home. 8 U.S.C. § 1231(b)(3). This means that the alien must demonstrate a "clear probability" that he/she would be subject to persecution upon removal. *INS v. Stevic*, 467 U.S. 407 (1984).

## III

Our review of this record establishes that the IJ's conclusion is supported by

substantial evidence. Nevertheless, although we affirm the decision of the IJ because it is supported by substantial evidence, we think it necessary to note our concern with one aspect of the IJ's decision. The IJ states that there is a contradiction between the dates of Zhao's employment listed on his I-589 form and Zhao's testimony regarding when he was allegedly held in the labor camp. A.R. 41. Zhao testified that he was sent to the labor camp in December of 1997. A.R. 103-104. The IJ believed Zhao was employed until March 1999. A.R. 134. However, Zhao lists his employment in China as being from 1986 *until* December 1997. A.R. 335. That is not inconsistent.

We are also concerned that the IJ expected formal documentation of the abortion and sterilization of Zhao's wife. Patients are not given documentation of medical procedures even in the highly documented and computerized medical world in the United States. The record does not establish that it would be reasonable to expect Zhao to have documentation for that kind of medical procedure in China.

The IJ also appears to have ignored information from the 1998 country profile that corroborates Zhao's testimony regarding fear of persecution. For example, the profile states that "unregistered Christians in China include . . . 'house church' Protestants."

> Repression . . . has reflected official concern over the Government's inability to control the rapid growth of membership in Christian groups. Local authorities have used threats, demolition of unregistered property, fines, interrogation, detention and reform-through-education sentences.

A.R. 162.

However, notwithstanding these concerns, substantial evidence remains to support

6

the finding that Zhao was not credible.  For example, the IJ's concerns regarding the other discrepancies between Zhao's I-589 and his testimony are supported by the record.  The IJ's concern regarding the vague nature of testimony regarding torture is appropriate, and concern over whether a photo of a worship meeting was staged is supported by the Zhao's own testimony.  A.R. 128-34, 146-47.

## IV.

Based on the foregoing analysis, we will affirm the BIA's decision.